Mr. Justice Thacher
delivered the opinion of the court.
This is an indictment for murder preferred by the grand jury of Lowndes county. The trial took place in Noxubee county, by a change of venue under the statute, and resulted in a verdict of guilty. A motion in' arrest of judgment was made, based upon the affidavit of an individual who had charge of the jury in the case for one half the time during the trial and a large part of the night of their retirement to deliberate upon their verdict, by which it appears that he was not sworn as bailiff in the case, but acted merely by the direction of the sheriff. It appears that this individual was not a sworn officer of the court, *467 nor sworn to discharge the particular duly which he undertook to perform, and that no officer had charge of the jury at the time he was so employed. No irregularity or miscarriage is charged upon the part of the jury, but the record is entirely silent as to their conduct. This motion in arrest of judgment was overruled in the circuit court.
According to the forms anciently established at trials, an officer of the court should always be placed at the box where the jury sit, to prevent any one from having communication with them ; and when they depart from the bar, they should be attended by a bailiff sworn for that purpose. 2 Hale’s P. C. 296; Buller’s N. P. 308. The form of the oath administered to the bailiff who takes charge of the jury, when they retire to consider of their verdict is as follows: — “You shall swear that you shall keep this jury without meat, drink, fire, or candle; you shall suffer none to speak to them, neither shall you speak to them yourself, but only to ask them whether they are agreed.” 2 Hale P. C. 296; Bac. Abr. Juries, G; 1 Chit. C. L. 632. In the case of Rex v. Stone, 6 T. R. 530, the form of oath permitted the bailiff to speak to the jury, but not “ touching any matter relative to the trial.”
In many courts, however, at the present day, it is not unusual that officers are sworn at the commencement of the term, to take charge of all juries in civil cases, and probably there is no reason for greater caution in criminal cases. Commonwealth v. Jenkins et als. Thach. C. C. 131. And so in regard to the restrictions upon the jury as to meat, drink, &c., they will be found to have been much modified, provided such refreshments are taken in moderation, and not at the expense of a party in the cause. 21 Vin. Abr. 448, Trial, (G. g.)
The trial by jury, so justly prized, should be scrupulously preserved inviolate, as guaranteed by the constitution, and protected against encroachment in all its essential attributes, and every change or modification of form should be admitted only when found to be absolutely necessary to meet the changes of society and the times. Its very forms, being designed to protect it from innovation, are said, in 4 Black. Com. 320, to be sacred *468 and not to be dispensed with. The rule that requires a jury, after being impanelled, to be kept free from every improper communication or intrusion, was established to render more certain the formation of an impartial and secret verdict. Accordingly, anciently, great strictness was used in relation to the conduct of jurors, and but little consideration indulged for their comfort or convenience. In more recent times, the conduct of jurors has been viewed in different lights, and construed with different degrees of strictness, both as regards the jurors themselves, and its effect upon their verdict. 1 Cow. 221, note; Commonwealth v. Roby, 12 Pick. 496. In the case of the Commonwealth v. Roby, Chief Justice Shaw, speaking of the effect of an irregularity of the jury, or of other persons employed in the various departments and various duties connected with the trial, propounds the rule, that if the irregularity is of such a nature that it does not, and in its tendency cannot, affect the rights of a prisoner or other party, whatever other consequence may follow upon such irregularity, it shall not avoid the verdict, because it has no tendency to affect that verdict injuriously to the party against whom it is found.” Thus, some modern authorities can be found of instances where juries have separated without authority of court, or jurors have separated from their fellows, or persons have intruded upon juries in their retirement, in which the irregularity has been held not to impair the verdict. 1 Dev. & Bat. 500; 1 Black. 25; 8 Cow. 355; 12 Pick. 496. But these are mostly cases where evidence excluded the presumption, that there was either influence, partiality, or undue excitement on the part of the jury — cases of a mere exposure to undue influences, but in which that exposure has been affirmatively shown to have produced no consequences of any kind. The effect of such an exposure, however, of which no explanation is given as to the extent of its influence, presents a subject of different consideration. Under such circumstances, the jealousy with which the purity of verdict is watched becomes immediately aroused, for the latest authorities hold, that if the irregularity has a tendency to affect the rights of the party it is sufficient to warrant its being set aside. Such a con- *469 elusion maybe legitimately deduced from the opinion in the case of the Commonwealth v. Roby, 12 Pick. Nor is this a new doctrine, for it was said by all t.he judges in Lord Delamere's case, 4 Harg. St. T. 232, that “an officer is sworn to keep the jury, without permitting them to separate, or any one to converse with them, for no man knows what may happen ; although the law requires honest men should be returned upon juries, and without a known objection, they are presumed to beprobi et legales homines, yet they are weak men, and, perhaps, may be wrought upon by undue applications.” The evil to be guarded against is improper influence, and when an exposure to such an influence is shown, and it is not shown that it failed of effect, then the presumption is against the purity of the verdict.
In the case before us, the jury for a portion of the time during the trial, and after their retirement, were not under the care and charge of proper and sworn officers of the court, or bailiffs sworn for that purpose. Such a deviation from the rules is stated in the case of Jones v. The State, 2 Blackf. R. 479, to be an error about which there can be no controversy, and that such is the fact is plainly deducible from the foregoing principles.
There were other points relied upon in the argument of this case, but the one upon which it has turned was chiefly pressed. There does not seem to have been any other error in the proceedings, and no good reason now exists for a minute examination of these points. It must be observed, in conclusion, .that this is not technically a case for a motion in arrest of judgment.
The judgment must be reversed, and a new trial awarded.