## Jones *vs.* The State of Georgia.

1. Intimate association by a sheriff with the jury while they are charged with a cause, such as occupying the same bed, is reprehensible, and would be sufficient ground for setting aside a verdict, if it be not satisfactorily shown that no improper influence was exerted by such officer, and no injury resulted to the defendant therefrom.

2. Misconduct on the part of the jury in a criminal cause, from which injury might have resulted to the defendant, throws the burden on the state to show affirmatively that the defendant was not injured thereby.

3. When such alleged misconduct is the use of spirituous liquors by the jury during the trial, affidavits from those persons who used the liquors, and others of the jury, showing that they were used with great moderation, and not to such an extent as to even slightly affect the capacity of any member of the jury, will release the state from this burden.

4. Though the person outraged swears that the crime of rape was actually committed by the prisoner, yet where an attempt is made to impeach her testimony, and her age and the circumstances surrounding the criminal act render her testimony on this subject doubtful, the jury may disregard it and find the accused guilty of an assault with intent to rape, there being overwhelming evidence of such assault.

Criminal Law. Practice in Superior Court. Officers Jurors. Charge of Court. Before Judge STEWART. Pike Superior Court. October Term, 1881.

Henry Jones was indicted for rape. On the trial, the evidence for the state was in brief, as follows: The girl, on whom the attempt was committed, testified that defendant came to her house, and enticed her into an adjoining wood by asking her to show him the way to a neighbors, promising to give her a quarter; that when they came to the wood, defendant gave her whiskey to drink, then threw her down and got on her; she did not consent to his doing so; he put his private into her; she screamed and he choked her; defendant kept her there until a Mr. Hemphill, and two others, came up, when he

got up and ran; she is between eleven and twelve years of age.

Another witness (Hemphill) testified as follows: He was walking over his farm, about 11 o'clock Sunday morning, in company with two other men, when he heard a noise like one in distress, at a place about two hundred yards distant; on going to the spot, he saw defendant on top of Louisa, in the act of having sexual intercourse with her; he got within nine steps of them when defendant, seeing him, got up and ran; Louisa got up, fell back, and would have fallen a second time but witness caught her; she said she did not know the man, had never seen him before; she was not intoxicated; witness saw defendant an hour later, when he was arrested, and recognized him; identified him both by his face and clothing; defendant's legs were muddy about both knees; when asked to account for it, said he had fallen off a bridge. It had been raining and was muddy in the woods. The scene of the crime showed signs of the ground being trampled and torn up. Defendant was arrested at a house a mile and a half, or two miles distant, about two or three hours after the crime was committed.

Other witnesses, who were with Hemphill, testified to the fact of seeing the parties together, as he had done, but did not know who they were. Others testified to seeing him near the scene of the crime about the time of its commission, and leaving it at a rapid gait.

The evidence of the defence was mainly in impeachment of the state's witnesses, and was, in brief, as follows: The marshal of Griffin (Bridges) testified that Hemphill told him he was walking through a piece of woods on his farm, and heard some little noise which attracted his attention, and about thirty steps from him he saw a man and woman down on the ground, but could not see who it was; the man got up and he (Hemphill) made a little noise, when the man ran; that after Jones was arrested he identified him by his clothing.

Watson, the justice of the peace before whom the pre-liminary trial was had, testified that Hemphill remarked in his presence, that "he did not know that he could swear positively to Jones being the man, and he believed he ought to be turned loose." Other witnesses testified to similar remarks of Hemphill, expressing doubt as to the identity of the prisoner.

It was in evidence that the defendant, while under ar-rest, pointed out to those having him in charge, the bridge from which he said he had fallen, and showed marks which he said his knees had made in the mud. There was also testimony that, on the preliminary trial before the magistrate, an opportunity was given the girl (Louisa) to identify the man (Jones), but she did not do so; that she was asked if Jones was the man, and replied she did not know; also, that she had made contradictory statements as to whether defendant actually accomplished his pur-pose or not, having stated at the preliminary trial that he pulled up her clothes and tried to have intercourse with her.

There was much more testimony not material here. Defendant made a statement to the effect that he had not been on Hemphill's place, and that he had never seen the girl before the preliminary trial. The jury found a verdict of guilty of assault with intent to rape. The defendant moved for a new trial; the motion was overruled, and de-fendant excepted on the grounds stated in the decision.

F. D. Dismuke; Boynton & Hammond; F. L. Har-alson, for plaintiff in error.

E. Womack, solicitor general, for the state.

Speer, Justice.

Plaintiff in error was indicted for the offence of rape, and convicted of assault with an attempt to commit rape. He made a motion for a new trial on various

grounds, as appear in the record, which was refused and he excepted.

The main grounds relied upon before this court for a reversal of the judgment of the court below were:

(1.) The misconduct of W. P. Bussey, sheriff of said county, for entering the room at night where the jurors were lodged and under the control of the bailiff and having the door closed after him. How long he remained in the room the record does not disclose.

(2.) Because the court instructed the jury "that if they believed the defendant was not guilty of the offence of rape, they might consider whether or not he is guilty of the offence of an assault with an intent to commit a rape. There being no evidence to justify the charge."

(3.) Because the court allowed a witness (McWilliams) to be sworn and testify for the state after the argument to the jury had commenced.

(4.) On account of the misconduct of the jury in being allowed, during the trial, intoxicating liquors and other refreshments, without the consent of the court.

1. It appears from the record that the trial of the defendant lasted several days, and at night the jury were removed from the court room to a house to be lodged and fed during the recess of the court. That owing to the length of the trial the jury were put under charge of special bailiffs, whose duty was to guard them from intrusion and prevent their separation, etc.; and during the night the sheriff of the county, W. P. Bussey, relieved one of the bailiffs from duty and assumed the duty of taking care of them. It does not appear from the evidence that his entrance into the lodging room of the jury was at any time during their deliberations, but otherwise, after they had been removed from the jury room at the court house to their lodgings. The affidavit of W. P. Bussey establishes the fact that in his conduct in guarding and taking charge of the jury, "he strictly observed all the rules and regulations as prescribed by the special oath ad-

v 68—50

ministered to bailiffs" on taking charge of a jury, and his affidavit in this respect is fully sustained by several of the jurors who were upon the panel. It is well known to us that under the law and custom of the courts the supervision of juries empanelled and the bailiffs in attendance upon them, is subject to the general supervision of the sheriff. It is through him arrangements are made to feed and lodge them during criminal trials, and, as a consequence, much is left to his prudence and discretion, to see that they are properly provided for and guarded from outside influence. In doing this his presence in their lodging rooms for such a purpose when they are not engaged in their deliberations would not necessarily vitiate a verdict, still, intimate association with any of them, such as occupying the same bed, is reprehensible and improper—would be a grave irregularity, and void a finding if the affidavits did not satisfy us that no improper influence was exerted and no injury resulted to the defendant from this cause. If the affidavits of both the officer and jury did not relieve his conduct from all suspicion of wrong to the state or defendant, we should be constrained to reverse the judgment and order a new trial.

2. As to the misconduct of the jury, as complained of in one of the grounds for new trial, we recognize the rule laid down by this court, "that misconduct on the part of the jury while they have the case under consideration, from which injury might have resulted to the defendant, throws the burden upon the state to show affirmatively, that no such injury has resulted." 45 *Ga.*, 225. Yet in looking into the affidavits filed in support of this ground, while it appears from affidavits of some of the jury alone, that they at their own expense procured, through the bailiff in charge, and used during said trial, spirituous liquors, yet the affidavits of the same and other jurors establish the fact that it was used in extreme moderation, and no juror was under the influence of the same to the extent of impairing or affecting in the slightest degree his

capacity as a juror. Moreover this fact of the use of re_ freshments in the jury room alone appears by the affida_ vits of the jurors themselves, and the rule is too well settled, that such evidence will not be received for the purpose of impeaching the verdict they have rendered. 45 *Ga.*, 225. On these grounds of the motion as to the alleged misconduct of Bussey, the sheriff, and of the jury pending said trial we are satisfied from a careful inspection of the affidavits filed in support of the motion and in vindication of the officer and jury, that the state has shown affirmatively that no injury has resulted to this defendant for either of the causes complained of.

3. As to the complaint made to the charge of the court instructing the jury, " That if they believed the defendant was not guilty of the offence of rape, they might consider whether or not he is guilty of the offence of assault with intent to commit a rape," we think there is sufficient evidence in the record to justify the charge as given and sustain the verdict as rendered. It is true the testimony of the little girl, eleven years old, the victim of this outrage, sustains the accusation that the higher offence was committed, but when it is remembered her testimony was sought to be impeached by the defence by a number of witnesses by proving contradictory statements ; when her age and size is taken into account, her physical condition at the time and immediately after the outrage, laboring as she was, under the influence of liquor which the attempted ravisher forced down her throat before the attack, there might be a grave doubt as to whether her testimony alone was sufficient as to the actual perpetration of the offence of rape. But unfortunately for the defendant, there were other witnesses who saw him in the act of making the attempt to commit this offence upon his helpless victim. These witnesses saw and testified to enough to satisfy any fair and impartial mind that he was seeking and attempting to perpetrate the offence. He had her upon the ground, was upon her person with her clothes up, and was

making every effort in the midst of her choking and smothered cries for help, to commit this outrage. Whether he consummated his purpose these witnesses could not testify; that he attempted to do so no shadow of a doubt exists. The jury might well have deemed it wisest in favor of the defendant, to rest their verdict upon the un-doubted testimony of these eye witnesses to this cruel wrong, rather than to believe, under the disadvantages of her surroundings at the time, the full testimony as to the consummation of the higher offence, and which was alone supported by the testimony of the victim. In the case cited by counsel for plaintiff in error *Kelsey vs. State*, 62 *Ga.*, 558, there was but one witness to the offence charged, and that was the person upon whom the alleged outrage was perpetrated. She was a woman of mature age and swore positively to the offence of rape upon her person by the accused, and yet in the face of this testi-mony the jury found the accused guilty of an assault with intent to commit a rape. Well might such a ver-dict be set aside as being against the testimony and law. But in this case, as we have said, there was evidence before the jury sufficient to sustain either offence; it was for them to say to whom they would give credit. This was their province; and if in favor of the accused, they returned him only guilty of the lower grade, he of all others has the least cause of complaint.

4. As to the introduction of the witness for the state (McWilliams) after the argument commenced: his pres-ence it appears was unknown to the state's attorney when he closed for the state. It was in the discretion of the court to allow him to testify, and we will not control it.

Judgment affirmed.