# WHEELING.

## STATE OF W. VA. *v.* POINDEXTER.

Submitted January 30, 1884—Decided April 19, 1884.

1. If on the trial of a prisoner in a certain county for the forgery of a certain writing alleged to have been committed in that county, it be proved that the said writing was found in the possession of the prisoner in the said county where he had uttered or attempted to utter the same as true, and there be no evidence to show that the forgery of said writing was committed in any other county, the jury from these facts may infer that the forgery of said writing was committed in that county. (p. 813.)

2. A jury empanelled and sworn in a felony case is, while not present in court, by the law committed to the custody of the sheriff or other officer, until it is discharged, without any special order of the court committing it to his care. (p. 812.)

3. While it is customary for the circuit court engaged in the trial of

a felony case before its adjournment until the next day to administer to the sheriff or some of his deputies the usual oath, that he or they "will keep the jury together, and neither speak to them nor permit any other person to do so, until they return into court," yet there is no law requiring the court to do so, and if the same be done, no additional duty or responsibility is thereby imposed upon the sheriff or other officer.  (p. 812.)

4. It is not error in the circuit court to refuse to set aside a verdict in a felony case, because it appears by the record that during the trial the court on a certain day before its adjournment administered such oath to the deputies of the sheriff, and that on the next day the jury appeared in court "*in charge of the sheriff*," pursuant to their adjournment.  (p. 812.)

5. An instruction to the jury, based upon a state of facts wholly unsupported by the evidence adduced upon the trial is properly rejected, although it may correctly propound the law upon the assumed statement of facts.

The facts of the case are contained in the opinion of the Court.

*Leonard & Caldwell* for plaintiff in error.

*Attorney-General Watts* for the State.

WOODS, JUDGE:

At the July term of the circuit court of Wood county, 1883, Joseph Poindexter was indicted for the forgery of a certain paper-writing purporting to be the check of one Creed Collins on the Parkersburg National Bank in favor of Joseph Poindexter for fifty dollars of the purport and effect following:

"PARKERSBURG, W. VA., April 2, 1883.

"Parkersburg National Bank, pay to Joseph Poindexter or bearer, fifty dollars. ·

"$50.00                          "CREED COLLINS."

The indictment contained two counts, the first in the usual form, charging the prisoner with the forgery of the said check; the second count charging that the prisoner had in his possession and uttered and attempted to employ as true with intent to injure and defraud, a certain other forged check for the payment of money, purporting to be made and signed by Creed Collins for the sum of fifty dollars, which

was precisely like the check set forth in the first count, except that the date thereof was the 3d *day of April,* 1882, instead of the 2d day of April, 1883, the prisoner then and there well knowing the said order to be forged, and ending with the usual conclusion. To this indictment the prisoner pleaded "not guilty," and on July 10, 1883, he was tried by a jury, which on the next day returned the following verdict: "We, the jury, find the defendant Joseph Poindexter not guilty as charged in the second count of the within indictment, but we do find him guilty of the forgery as charged in the first count of the within indictment." When the check set out in the first count was offered in evidence, the prisoner objected to its introduction, but the court overruled his objection, and he excepted, which is the ground of his first bill of exceptions, but before the jury retired to consider of their verdict, the court instructed them, that the check offered in evidence by the State is not such a check as is described in the second count of the indictment, and is therefore not evidence in support of that count, and is only to be considered evidence in support of the charge of the first count of the indictment.

Before the jury retired the prisoner by his counsel asked the court to give the jury seven instructions, numbered respectively from one to seven; the first five instructions were given as requested, the sixth and seventh were refused, and the prisoner again excepted and filed his second bill of exceptions. After the verdict was rendered and before judgment the prisoner moved the court to arrest the judgment and set aside the verdict, which motion was overruled, and the prisoner again excepted and filed his third bill of exceptions in which the court certified all the testimony given at the trial.

The substance of the sixth instruction asked for by the prisoner and refused by the court was, that " unless the jury believed from the evidence that the signature of Creed Collins alleged to be forged to the check or order produced in evidence, resembled his genuine signature so much as to deceive men of ordinary business capacity, then they must find the prisoner not guilty." This instruction is clearly erroneous, for if the forged instrument be in the usual form of such an instrument, and regular upon the face of it, and

nothing appears to cause a man of ordinary prudence to suspect its genuineness, it may and ordinarily does, possess as much influence among persons unacquainted with the genuine signature of the alleged maker, and is as well calculated to deceive and defraud them as a forged signature, closely resembling the genuine would be likely to deceive and defraud men of ordinary business capacity, *who were reasonably well acquainted with the genuine* signature of him whose name is alleged to have been forged. In the great majority of ordinary business transactions, where commercial paper of all kinds is transferred, the paper is accepted not because the transferees are at all acquainted with the signature of the maker of the note, or of the drawer or acceptor of the bill, of whom in many cases they have never heard, but upon their faith in, and their knowledge of the pecuniary responsibility of the person from whom they receive the instrument. Ordinarily men interest themselves very little in regard to the maker, drawer or acceptor, unless they have doubts about the responsibility or good faith of their endorser.

The court did not err in refusing to give the prisoner's sixth instruction to the jury. The seventh instruction asked for by the prisoner, which the court also refused to give was in these words:

" The jury are instructed that criminal intent is a necessary and essential constituent of the crime of forgery, and, like every other issue in the case, must be conclusively established by the evidence; and if the jury believe from the evidence that the prisoner, *at the time of the alleged forgery, was laboring under a temporary diseased state of mind,* the effect of a long continued state of intoxication, and that while in such a condition of mind did not know what he was doing, then he was not capable of exercising criminal intent and the jury must find him not guilty."

The evident purpose of this instruction, was to call the special attention of the jury to such portions of the evidence as tended to show the intemperate habits of the prisoner, the peculiar, excited condition of the prisoner's mind *when intoxicated*, tending to create in their minds, that reasonable doubt of his capacity to have the *criminal intent to defraud*, necessary

to constitute the crime of forgery. It is not to be doubted, that if the prisoner at the time he forged the said writing was from habitual drunkenness, or any other cause, actually *insane*, he could not be found guilty, for in that case he could not be said to possess the capacity to form any criminal intent, and if the instruction had been confined to that point it would have been unobjectionable. But it confounds the *crime* of *forgery*, with the false signing or making of the alleged forged or counterfeited writing. The crime of forgery does not consist alone in the false making or materially altering of any writing which, if genuine, might have legal efficacy, or create a legal liability, for all this may be done and no crime be committed.

Sir William Blackstone defines forgery at the common law to be "the fraudulent making or alteration of a writing to the prejudice of another's rights." 4 Bk. Com. 247. Mr. Wharton defines forgery to be the fraudulent falsifying of an instrument to another's prejudice. 1 Whar. Cr. L., 8 Ed. sec. 655. Bishop defines forgery to be the "false making or materially altering *with intent to defraud* of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." 1 Bish. Cr. L., sec. 572. Prof. Greenleaf adopts the definition of Blackstone. However it may have been defined, yet all the text-writers, as well as the decisions of all the courts, hold that the false making, or the material alteration, or the falsifying of the instruments which is to the prejudice of another's rights, must have been done *with intent to defraud*, and if this *intent to defraud*, from any cause be absent from the mind of the accused at the time of the making, altering or falsifying the writing, the crime of forgery has not been committed, for it is the presence of this intent to defraud which distinguishes the crime of forgery from the innocent making, altering or falsifying such writing. If the prisoner had asked the court to instruct the jury, that if they believed from the evidence that the prisoner at the time he made the said check or order, did not in fact know what he was then doing, and that he was not capable of exercising criminal intent, they must find him not guilty, it might not have been objectionable, but when he asked the court to instruct the jury, that "if they believed

from the evidence that the prisoner at the time of the alleged *forgery* was laboring under a temporary *diseased state of mind*, the effect of a long continued state of intoxication, and that while in such a condition did not know what he was doing, then he was not capable of exercising criminal intent, and the jury must find him not guilty," he in effect asked the court to instruct the jury, that if they believed that the prisoner at the time he falsely made the said check or order on Creed Collins "*with the intent to defraud*," "did not know what he was doing" &c., then he was not capable of exercising the criminal intent to defraud, that is to say, that he was not capable of exercising the very intent which they, from the evidence, believed he had in fact exercised. Such an instruction would necessarily tend to mislead the jury, and for that reason alone it ought not to have been given.

But there is another good reason, why this instruction ought not to have been given, and that is, that there was no evidence in the case, tending to establish the assumption that when the said check was forged the prisoner was at all under the influence of intoxicants, or that he was then laboring under any diseased state of mind whatever.

The testimony of Collins shows that when he last saw the prisoner before his arrest, he was drunk and had been drinking for some time; that when he got on the cars to leave Pennsboro, he was drunk; had frequently seen him drunk, and that *when he was drinking*, witness was satisfied prisoner did not know what he was doing. Prisoner's wife testified "that when he left Pennsboro he was intoxicated, and had been drinking for some time; he don't know what he is doing *when he is intoxicated*, and the least amount of whisky sets him crazy, so he don't know what he is doing." Another witness for prisoner said, "I have known prisoner for several years; from my knowledge of him I don't believe him to be mentally right when sober; when drinking he is demented, not of sane mind; when under the influence of liquor he is crazy and in one minute would forget what he had done a minute before; he was drunk when he came to town and when arrested." Another witness testified, "I have known prisoner eight years; he has worked for me sometimes; *when he is drinking* he is unconscious of what he does; his mind is

affected; he is irresponsible; he becomes crazy and doesn't know what he is doing." The prisoner himself testified, that he lived in Pennsboro; has a wife and six children; knew nothing about the check until after he was in jail; never recollected seeing it before; can't recollect anything when he drinks; don't know how or when he left Pennsboro; he was injured on his head by a pistol shot; has constant pain in his head; he takes whisky to deaden the pain, and whenever he uses it he don't know what he does nor where he is.

There is no direct testimony to show when or where the check was forged. He is found with it in his possession in Wood county making repeated efforts to have it cashed. The proof of the forgery of the check is overwhelming, and the testimony shows that when he came to Parkersburg, and when he tried to have it cashed he was intoxicated; and if the inquiry had been whether he knew what he was doing at that time, the instruction would have been authorized by the testimony of the foregoing witnesses. As there is no evidence to show when or where the check was forged, neither is there any evidence whatever to show that when it was forged the prisoner was under the influence of liquor, or that his mind was in any degree impaired or affected. The record does not disclose when he left Pennsboro, nor when he came to Parkersburg, nor when he was first known to have the check in his possession, nor when he was arrested. There was no evidence therefore to warrant such an instruction, and the court did not err in refusing to give the same to the jury. *Winkler* v. *C. & O. R. R. Co.*, 12 W. Va. 699. It is insisted by counsel for the prisoner that the check was improperly admitted in evidence as it was materially variant from the one described in the indictment. The check was misdescribed in the second count, and the court very properly instructed the jury that it could not be used to support the charge in that count and that it could only be used as evidence in support of the first count. This count of the indictment did not profess to set out the tenor, which imports a *verbatim* copy of the check, but only its purport and effect, which means the legal effect of the instrument as a whole. It is described as a certain order for the payment of

money commonly called a check purporting to be the check of one Creed Collins for the sum of fifty dollars, which said forged check is of the purport and effect following, to-wit, &c. ' The check produced in evidence, was a *verbatim* copy of the one set out in the indictment, except that the letters " ar " in the word " bearer " are blurred or blotted, but an examination of the original paper, brought up by *certiorari*, satisfies us there is no variance between that described in the first count and that produced and read in evidence, and the circuit court did not err in permitting it to be read by the jury.

There is nothing in the prisoner's second assignment of error because section 31 of chapter 83 of the Acts of 1882, like section 31 of chapter 116 of the Code is merely directory, and because it does not appear by anything in the record that the court did not inform the jury as required by the provision of said section 31. Nor is there anything in his sixth assignment of error, viz: that the court erred in not setting aside the verdict, because it appeared from the record that before the court adjourned on the 10th of July, the jury was committed to the custody of three deputies of the sheriff, who took the usual oath, to keep the jury together, &c., and that when the jury came into court the next morning pursuant to their adjournment, they appeared in court in the custody of the sheriff himself, and not in the custody of his said deputies. Section 32 of chapter 83 of the Acts of 1882, which is identical with section 32 of chapter 116 of the Code and with section 41 of chapter 163 of the Code of Virginia of 1849, declares that "after a jury has been empanelled no sheriff or other officer shall converse with, or permit any one else to converse with a juror, unless by leave of the court." By section 6 of chapter 159 of the Code it is provided that, " After a jury in a case of felony is empanelled and sworn, they shall be kept together and furnished with suitable board and lodgings by the sheriff or other officer until they agree upon a verdict or are discharged by the court." Such a jury by the law is in the custody of the sheriff; it is his duty to keep them together during the recess of the court and to bring them into court, and this he may do in person or by his deputies; the law prescribes and

requires no other oath from him or them for the faithful discharge of this duty; and while it is customary for the court before its adjournment every day to administer a special oath to the sheriff or his deputies, that he will keep the jury together, and neither speak to them himself, &c., yet there is no law requiring this to be done, nor is there any additional duty or responsibility imposed on the sheriff when it is done. The oath usually administered under such circumstances is only a solemn admonition to the sheriff and his deputies, to be exceedingly vigilant in the discharge of this special duty. In the case under consideration it is not pretended that the jury had not been kept together, or that the sheriff or his deputies had not properly discharged their duties to the prisoner, or that he had been in any manner injured by the acts of the sheriff or his deputies. We are of opinion therefore that the circuit court did not err in overruling the prisoner's motion, for either of the said second or sixth assignment of errors.

It is insisted that the verdict was not warranted by the evidence, and because there was no evidence that the alleged forgery was committed in Wood county. As we have already seen, there was no direct evidence *when* the check was forged, and of necessity there could be no evidence showing whether at that time he was drunk or sober. Neither is there direct evidence to show *where* or in what county the actual forgery was committed. While the prisoner's home was in Ritchie county, he is found in possession of the check in Wood county, making repeated efforts to have it cashed, and though quite drunk at these times, and when according to the testimony of himself and witnesses he ought to have been crazy, we find him sending his friend with the check to the bank and to Jenkins to have it cashed, going there afterwards with his friend, asking, "what is wrong with that check? There's nothing wrong with it." He was never seen with or known to be in possession of the check in any other county than in Wood county, and the jury had the right to infer, and they did infer, that the forgery was committed in Wood county. 3 Greenl. Ev. sec. 112. This particular question was considered and decided by the general court of Virginia in *Spencer's Case*, 2 Leigh 751, where the

court, upon the trial of an indictment for forging bank-notes, held that proof of the fact that they were found in possession of the prisoner in a certain county was proper evidence to be given to the jury of the fact that he committed the forgery in that county. The forged check in the case under consideration purported to be made in Parkersburg, which is proved to be in Wood county; the prisoner was in possession of the check in that county, and there was attempting to utter the same, and there is no evidence tending to show that he had the check in any other county. From these facts, in the absence of all evidence tending to show that the forgery took place in any other county, the jury had the right to infer the forgery was committed in Wood county. We are satisfied that the verdict was not contrary to the law and was fully warranted by the evidence, and that the court did not err in overruling the prisoner's motion to set aside the verdict and grant him a new trial.

The judgment of the circuit court of Wood county must be affirmed with costs and thirty dollars damages against the plaintiff in error.

AFFIRMED.