## SMITH *v.* THE STATE.

The misconduct of the members of the jury and of the officers who had them in charge, in this case, was of such character as to warrant a new trial.

Argued February 21, — Decided March 2, 1905.

Indictment for murder. Before Judge Roberts. Irwin superior court. December 31, 1904.

*S. A. Roddenbery* and *Z. Bass*, for plaintiff in error.

*John C. Hart, attorney-general, E. D. Graham, solicitor-general*, and *J. F. DeLacy*, contra.

SIMMONS, C. J. Smith was indicted and convicted of the offense of murder. He made a motion for a new trial on many grounds. We do not deem it necessary to discuss them all, but will put our judgment upon the one attacking the verdict on account of the gross misconduct on the part of the officers in charge of the jury and of the jurors themselves. It appears from the record that after the jury had been empaneled, the court adjourned for the night and left the jury in the court-room, where they, together with persons not members of the jury, engaged in playing the violin and organ and in dancing. It also appears that some of the jurors engaged in conversation with a person not a member of the jury, but not upon the subject of the case which they were to try, and that before the conversation had long ensued the bailiff forbade further talking by the jurors with outside parties; whereupon those who were not jurors withdrew from within the bar railing, where the jurors were, and sat down in another part of the room. It does not appear for how long the jury thus amused themselves and the crowd, before they went from the court-house to the town hotel, where they spent the night, occupying two rooms, a bailiff also sleeping in each room. On the second night of the trial the jury were removed to a boarding-house, where they occupied four different rooms, one juror sleeping in a hallway with the bailiffs. On the morning following. this juror who had slept with the bailiff had a conversation with

him concerning the case. This conversation is not denied by the juror, who makes affidavit stating in general terms that he was not influenced by anything but the evidence, argument of counsel, and charge of the court. It further appears that one of the offi-. cers took one of the jurors from the house where they spent the second night, leaving the others with a bailiff and instructing him to bring them "on"—where it is not stated—when they were dressed. After the evidence was closed, argument made, and charge delivered by the court, the jury left the court-room in company with a bailiff and went to the woods. One of the witnesses for the accused had testified that he had seen the deceased with a knife in his hand at a distance of forty-five or fifty yards. Upon reaching the woods one of the jurors stepped off fifty yards, held a knife in his hand, and struck at a tree with it; from which the jury decided that the knife could not have been identified at that distance; whereupon the bailiff remarked that the witness did not "identify the knife that way." The jury returned to their room and returned a verdict of guilty with a recommendation for life imprisonment. All of these facts were made to appear by the affidavit of one of the bailiffs in charge of the jury and the affidavits of others not on the jury. Ten jurors testified in a general manner that they were not influenced by anything outside of the evidence, argument of counsel, and charge of the court; that no one had spoken to them about the case, and that they had decided it upon its merits. Two of the jurors are unaccounted for; at least they fail to make affidavit sustaining the verdict.

The law is, in the trial of felony cases, that if any irregularity is shown in the conduct of the jury or the officers that have them in charge, the burden is upon the State to show that the accused is not injured by such misconduct. In this case, as before remarked, ten of the jurors depose that their minds were not influenced by any of the irregularities detailed above; but we think that for the State to fully carry the burden it must prove by all the jurors such facts as will tend to show to the court that no injury has been suffered by the accused. The record does not disclose why two of the jurors did not join with the others in making these affidavits. This, unexplained, might imply that they could not truthfully do so. While the ten jurors all depose that they

did not speak to any one about the case and that no one spoke to them, they fail to say that they did not hear any remarks about the case while the music and dancing were going on.   In the case of *Obear* v. *Gray*, 68 *Ga.* 187, it appears that the jury had been allowed to go to a city park on Sunday afternoon.   Warner, J., in discussing the separation of the jury and its walk through the park, says: " It is true that the affidavits offered show everything necessary to purge them, except that it does not appear but that they heard bystanders make remarks about the case.   To make the purgation complete, this should affirmatively appear."   While the jurors may truthfully depose that they did not speak nor were spoken to about the case, according to the decision quoted they must also show that they did not hear any remarks concerning the case by bystanders, in order to make the purgation complete. Nor is there anything in the testimony of Hardy (who slept with the bailiff) to show that he did not converse with the bailiff about the case while they were alone together.   The bailiff swears positively that Hardy, who was one of the jurors, discussed the case with him, while Hardy only swears in a general way that no one spoke to him about it.   None of them deny or explain the experiment with the knife.   McGue, a witness, had testified postively that he saw the deceased with the knife in his hand at a distance of forty-five or fifty yards from him.   The jury, without leave of court and unknown to counsel, went to the woods and made a test as to whether McGue could see the knife at a distance of fifty yards.   This was evidence that they introduced themselves, unknown to the court or the parties.   In many jurisdictions the courts have held that such, alone, is ground for new trial if no other error is committed.   It is stated in 12 Am. & Eng. Enc. L. (2d ed.) 412, " It is a very generally recognized rule that if the members of a jury, during the course of their deliberations, make experiments, without the consent of the trial court, for the purpose of ascertaining facts testified to on the trial, such conduct is ground for a new trial or a reversal of the judgment."   In 1 Thomp. Tr. § 904, we find, "Jurors must base their findings upon evidence adduced in their hearing in court, or upon a view authorized by the court. For a juror to go out of court, of his own motion, and make an inspection of the premises or thing in dispute, will be good ground of setting aside the verdict."   See also Yates *v.* People, 38 Ill. 531 ;

State *v.* Sanderes, 68 Mo. 202, 30 Am. Rep. 782; Con. Ice Co. *v.* Trenton Ice Co., 57 Fed. Rep. 898.

This court, from the time of its organization to the present time, has striven to protect the purity and impartiality of jury trials, and wherever there have been irregularities, unless fully explained and the court satisfied that the accused has not been injured, new trials have been granted. Where the misconduct of the officers and jury has been gross, this court and others have held that a new trial should be granted on account of public policy, whether the accused was injured or not. In the case of *Shaw* v. *State*, 83 *Ga.* 99, this court said:. "There are other things, however, which if done by an individual member of the jury, or by the whole jury, are so contrary to the public policy of the State in the procurement of fair and impartial trials for the citizens of the State, as to require that a verdict rendered by such jury be set aside, whether the defendant has been injured thereby or not; and, in our opinion, the case under consideration belongs to this class." And again, on page 101, it was further said: "After mature deliberation of all these facts, we think the misconduct of this bailiff and jury was so gross that the public policy of the State requires a new trial for the defendant. It was such a gross violation of all order, decorum, and decency in the trial of a case of life and death, that the verdict should be set aside, whether the defendant was injured or not." See also *Rainey* v. *State*, 100 *Ga.* 82; *Central Ry. Co.* v. *Hammond*, 109 *Ga.* 385. For upright, intelligent jurors, who have been charged with the life and death of one of their follow-citizens, to engage in music and dancing after they have been sworn, is almost incredible. The constant separation of the jury, their leaving the court-room without permission of the judge and against the oath of the bailiff, for the purpose of making experiments upon the testimony sworn before them; all of these facts make this a case where the public policy of the State demands a new trial. The courts must uphold the impartiality, decorum, and decency of jury trials; and wherever misconduct like this is shown, the courts must condemn it by granting new trials. It is much better for the accused to have a new trial, even though he be guilty, than for the courts to countenance such deportment.

*Judgment reversed. All the Justices concur.*