## 19185.  HANNAH *v.* THE STATE.

Argued January 9, 1956—Decided March 14, 1956.

314

*Wm. T. Dean,* for plaintiff in error.

*Roy Leathers, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

HEAD, Justice. 1. The general grounds of the motion for new trial, and special grounds 8 through 14, have been abandoned by the defendant.

2. Error is assigned in special ground 4 because Roy Leathers,

Solicitor-General of the Stone Mountain Circuit, stated that his physical condition would not permit him to continue with the trial of the case, and that he had decided to turn the actual trial over to Marshall Pollock, Solicitor-General of the Western Circuit. The court allowed Mr. Pollock to proceed with the interrogation of witnesses, but did not, himself, under the provisions of Code § 24-2913 "appoint a competent attorney of the circuit to act in his place, or . . . command the services of a solicitor-general."

The granting of the motion of the Solicitor-General of the Stone Mountain Circuit to utilize the services of the Solicitor-General of the Western Circuit was the equivalent of the court "commanding" the services of the latter. A solicitor-general of another circuit may, at the request of the prosecution, appear and assist in the trial although not requisitioned by the judge, even though the solicitor-general of the trial circuit is not indisposed. *Floyd v. State,* 182 *Ga.* 549 (186 S. E. 556). Also, the solicitor-general may retain counsel to assist him in the trial of the case. *Vernon v. State,* 146 *Ga.* 709 (92 S. E. 76) ; *Jackson v. State,* 156 *Ga.* 842, 844 (7) (120 S. E. 535). This ground is without merit.

3. Grounds 5 and 6 assign error on the charge of the court on the contentions of the defendant, as follows: "The defendant contends and alleges that she did not kill and did not hire anyone to kill the deceased, Cecil Hannah. That she was not concerned therewith, took no part in it, *that the only thing she did was to assist in removing the body after the commission of the crime.* If you find that to be true, she would not be guilty." This charge is assigned as error on the ground that the court erroneously stated the contentions of the defendant, and for a number of other reasons. This ground sets out the statement of the defendant with reference to her participation in the homicide as follows: "I was not in the room when he was killed. I did help cover up after the killing for I wanted to cover up anything that William was forced to do. . . Gentlemen, I may be guilty of helping after the killing for I wanted to cover up anything that William was forced to do. . . Gentlemen, I may be guilty of helping after the killing, but not of the murder."

It further appears from the record that the defendant did not deny that she did certain acts in an effort to conceal the crime,

which acts are relied upon, in part, by the State to secure her conviction. The defendant called a taxicab and went to the place where her son and the two Negroes, jointly indicted with her, were to conceal the car containing the body of the deceased, for the purpose of returning her son and the Negroes from that place to their home; she helped to conceal the clothing worn by the deceased and the weapons used in the commission of the homicide; and she paid the taxicab driver and furnished money to one of the Negroes after the commission of the crime. It is contended by counsel for the defendant that all of the acts related are consistent with the sole defense of the defendant, that she was not guilty of murder, but guilty as an accessory after the fact of murder.

"When the court undertook to state to the jury the contention of defendant, the defendant had the right to have it submitted correctly; and when the court deprived defendant of this right, reversible error was committed." *Smiley* v. *State,* 156 *Ga.* 60, 63 (7a) (118 S. E. 713), and citations; *Durham* v. *State,* 177 *Ga.* 744 (171 S. E. 265); *Jones* v. *State,* 207 *Ga.* 379 (62 S. E. 2d 187). The charge of the court that the jury could acquit the defendant only if they found "the only thing she did was to assist in removing the body," unduly restricted the defendant's defense, by excluding other acts performed by her as an accessory after the fact of murder, and requires the grant of a new trial.

4. Grounds 7 and 7-A assign error on the charge of the court relating to admissions by silence or acquiescence, with reference to certain testimony admitted without objection. It is contended that no statements were made in the presence of the defendant which required an answer by her; there was no evidence that the defendant remained silent; the judge did not state under what circumstances the defendant would or would not be required to answer the statements made in her presence; the court failed to instruct the jury as to what constituted incriminating statements; the charge given was not sound as an abstract principle of law; and error is otherwise assigned for a number of reasons which need not be set forth.

It appears that the defendant and her son, while in custody of the officers, had a conversation, and that the son made a number of incriminating statements, probably the strongest being: "We're

all in this thing together, not any of us is going to get out of it."
To which the defendant replied: "Son, you feel better since you
told the truth about it. I knew if you ever told anybody about it
you'd tell the truth about it."

As shown in the previous division of this opinion, the defendant
admitted her participation in the homicide as an accessory after
the fact. If the defendant understood her son's remarks to relate
to the homicide as having been committed by the other defend-
ants and her acts as an accessory after the fact, in her attempt to
conceal the crime, the defendant would be "in this thing" and
could not reasonably anticipate that she was "going to get out"
of punishment for the crime actually committed by her as an
accessory after the fact. It therefore appears that complete si-
lence by the defendant, if she understood her son's remarks to
refer to her participation only as an accessory after the fact,
could not properly be construed as an admission by her of par-
ticipation in the principal crime charged.

Silence can be taken as an implied admission only where the
circumstances are such as to demand a reply. *Ware* v. *State,* 96
*Ga.* 349 (23 S. E. 410); *Rosborough* v. *State,* 209 *Ga.* 362 (72 S.
E. 2d 717). The jury in the present case, under all of the facts
and circumstances relating to the alleged conversations, would
have been authorized to believe that the son's remarks were in-
tended to relate to some actual participation by the defendant in
the principal crime charged, and it was not error for the court
to charge on admission by silence.

It was not error for the court, in the absence of a timely and
appropriate written request, to fail to charge the jury that, if the
defendant believed her son's remarks related only to her partici-
pation as an accessory after the fact, the circumstances would not
be such as to require a denial by her of any participation in the
principal crime charged.

5. In ground 16 it is contended that reversible error was com-
mitted by the court in permitting the sheriff to send the jury out
of Rockdale County and into Newton County to spend the night
at the Crest Motel, without the knowledge or consent of the de-
fendant or her counsel. It is stated that neither the defendant
nor her counsel knew that the jury had been taken beyond the
confines of Rockdale County until after the rendition of the ver-

dict, as shown by the affidavits attached. It is contended that the sending of the jury out of the county was contrary to law; that the bailiff in charge of the jury had no jurisdiction and no legal control of the jury in Newton County; and that the court erred in authorizing and directing the jury to leave the county during the progress of the trial.

In ground 17 it is contended that the jury was divided, six jurors and one officer occupying a certain space, and six jurors and another officer occupying a different space; that the separation of the jury was without the knowledge or consent of the defendant and her counsel, and knowledge of such separation did not come to either the defendant or her counsel until after the verdict (as shown by affidavits attached); that the defendant was entitled to have the jury remain together while she was on trial, and did not waive this right.

In notes attached to these grounds, the trial judge certifies that the Crest Motel was selected because it was air-conditioned, had larger rooms, and had been approved by "Quality Courts, Inc., and the American Automobile Association," and that available facilities in Rockdale County had not been so approved, and that the Crest Motel provided the best and most ample facilities for keeping the jurors "as nearly together as possible."

The act of the General Assembly approved February 23, 1955 (Ga. L. 1955, pp. 248-249), which purports to amend Chapter 59-7 of the Code, pertaining to jury trials, by adding a new section authorizing the trial judge in his discretion to permit the segregation of jurors according to age or sex, or both, under such circumstances as the court deems necessary, is not applicable in the present case. The judge does not certify that the jury was sent from Rockdale County into another county on the basis of this law, nor is there anything in the record tending to show that the separation of the jury was based on age or sex.

The Constitution requires that all criminal trials shall be held in the county where the crime was committed, and our statute law makes a similar requirement (except where a change of venue is granted pursuant to the rules of law applicable thereto). Constitution, art. VI, sec. XIV, par. VI (Code, Ann., § 2-4906); Code § 27-1101. It does not appear that the jury was given any instructions by the court not to consider the case while they were

out of the county, and until they had returned to the courtroom. The deliberations of a trial jury are just as much a part of a trial as any other act or procedure of the court in reference thereto, and the constitutional requirement that a defendant be tried in the county where the crime is alleged to have occurred can not be vacated by a legislative act purporting to vest a discretion in a trial judge relating to the comfort of the jury. The act of 1955, however, does not purport to authorize a trial judge during the progress of a trial to send a jury from the county where the trial is being held into another county, solely because accommodations for the jury may, in the opinion of the judge, be more modern and in keeping with certain approved standards. Waiver by the defendant or her counsel is not involved. In this connection, see *Colley* v. *State*, 164 *Ga.* 88 (138 S. E. 65); *Trussell* v. *State*, 181 *Ga.* 424, 426 (182 S. E. 514); and *Robinson* v. *State*, 209 *Ga.* 650 (75 S. E. 2d 9).

It has long been the rule in Georgia that the separation of a jury, without the consent of the defendant or the defendant's counsel, is prima facie error, and where as in this case, no countershowing is made by the State tending to show that the defendant was not, and could not have been harmed by the separation of the jury, a new trial will be granted. *Westmoreland* v. *State*, 45 *Ga.* 225 (8); *Jones* v. *State*, 68 *Ga.* 760 (2); *Silvey* v. *State*, 71 *Ga.* 553; *Kirk* v. *State*, 73 *Ga.* 620 (3); *Shaw* v. *State*, 83 *Ga.* 92, 98 (9 S. E. 768); *Smith* v. *State*, 122 *Ga.* 154, 155 (50 S. E. 62). It was error to overrule grounds 16 and 17.

6. In ground 15 error is assigned on the action of the court bailiff, Ernest Sims, in turning over to Bentley Adams, a deputy sheriff, six of the jurors on the night the jury was sent to the Crest Motel. In this ground it is asserted that Bentley Adams, some time previous to the term of court, had taken the oath as a Deputy Sheriff of Rockdale County, but that he had not taken the oath required of a bailiff having charge of a jury. It is contended that Bentley Adams was not qualified to have custody of a jury because he had not taken the bailiff's oath, and that his custody of a part of the jury was such error as to require the grant of a new trial. The affidavit of Bentley Adams to the effect that he had taken only the oath required of a deputy sheriff is attached to this ground and made a part thereof.

In support of this ground, counsel for the defendant cites *Roberts* v. *State,* 72 *Ga.* 673, and *Washington* v. *State,* 138 *Ga.* 370 (75 S. E. 253) ; and it is contended that these authorities are controlling on the issue now before the court. With this contention we can not agree. It is true that in both of the cases cited the judgment of the court denying a new trial was reversed upon the ground that the bailiff having charge of the jury had not been sworn as required by law; it further appears that neither the oath required of a deputy sheriff nor any other oath pertaining to the duties of an officer had been administered. In so far as we are able to ascertain, in the present case for the first time the question is squarely presented to this court as to whether or not any officer who has not taken the oath prescribed for a court bailiff may lawfully have custody of a jury during their deliberations.

Under the title "Courts," Title 24 of the Code, we find Chapter 24-32 with reference to bailiffs. Section 24-3201 provides: "The following oath shall be administered to all bailiffs sworn to take charge of petit juries in the superior courts, to wit: 'You shall take all juries committed to your charge during the present term to the jury room, or some other private and convenient place, where you shall keep them without meat or drink (water excepted) unless otherwise directed by the court; you shall make no communication with them yourself, not permit any one to communicate with them, except by leave of the court; you shall discharge all other duties which may devolve upon you as bailiffs to the best of your skill and power. So help you God.' "

Chapters 59-1 through 59-8 of the Code relate to the selection, duties, etc., of jurors and juries, and § 59-717 contains the same oath found under "Courts" as § 24-3201. Preceding the oath in § 59-717, it is stated: "The following oath shall be administered to all bailiffs on duty in the superior court, to wit:" etc. These two sections of our Code (24-3201 and 59-717) constitute the only specific directions as to persons authorized to have custody of a jury during their deliberations. The term "bailiff" as used in these sections of the Code does not refer to a separate and distinct "public officer" as defined by our law. A court bailiff does not have any term of office as such court bailiff; he acts only during the term at which he is sworn; he is not under bond as a court bailiff; and he receives no commission as a court bailiff.

The term "bailiff" as used in these statutes accords with the definition of the word "bailiff" in Bouvier's Law Dictionary, as follows: "A person to whom some authority, care, guardianship, or jurisdiction is delivered, committed, or intrusted." Bouvier's Law Dictionary, vol. 1, page 312.

If our statutes had used the word "person " in place of the word "bailiff", the law would then require that "the following oath shall be administered to all *persons* sworn to take charge of petit jurors in the superior courts." This form would have completely eliminated any basis for the contention that a sheriff or a deputy sheriff by reason of having taken only the general oath applicable to these officers, as found in Code § 24-2804, would be a proper person to have charge of a jury during their deliberations. The sheriff's oath does not contain any provisions similar to the oath required of bailiffs, but only that he will execute all writs "and in all things well and truly, without malice or partiality, perform the duties of the office of sheriff," or deputy sheriff, as the case may be.

The statutes relating to the duties of sheriffs make no direct or indirect reference to any duty or authority for the custody of a petit jury during their deliberations in the superior court. After listing a number of duties of the sheriff, it is provided in Code § 24-2813 (8) that he shall "perform such other duties as are or may be imposed by law, or which necessarily appertain to his office." This provision of the Code first appeared in the Code of 1863. It was not incorporated in the Judiciary Act of 1799, which first by statute defined the duties of sheriffs in this State. See Cobb's Digest, 1851, pp. 573, 575-577. Nor did the provision that he shall perform such duties as may be imposed by law or necessarily appertain to his office appear in any subsequent statutory enactment prior to the Code of 1863.

In *Elder* v. *Camp,* 193 *Ga.* 320, 322 (5) (18 S. E. 2d 622), it was said: "The office of sheriff carries with it, in America, all of its common-law duties and powers, except as modified by statute." To the same effect see *Foster* v. *Vickery,* 202 *Ga.* 55, 60 (42 S. E. 2d 117). This statement in *Elder* v. *Camp,* supra, and *Foster* v. *Vickery,* supra, is true for the reason that Georgia was one of the original thirteen colonies, and the common law and statutes of England constituted the law of force in the colony

prior to Georgia's independence. On February 25, 1784, the common law and statutes of England in force prior to May 14, 1776, were adopted in this State by statute. Cobb's Digest, 1851, p. 721; *Harris* v. *Powers,* 129 *Ga.* 74 (58 S. E. 1038, 12 Ann. Cas. 475) ; *Pedigo* v. *Celanese Corp. of America,* 205 *Ga.* 392, 401 (54 S. E. 2d 252).

Under the law of England in force in Georgia during the period of Georgia's continuance as a colony, it was provided that in all jury trials, when the jury retired to consider their verdict, they would be in the charge and custody of a bailiff, to whom the following oath was administered: "You shall swear that you shall keep this jury without meat, drink, fire, or candle; you shall suffer none to speak to them, neither shall you speak to them yourself, but only to ask them whether they are agreed: So help you God." Chitty on Criminal Law, p. 632; The King *v.* Stone, English Reports, vol. 101, p. 686; Reports of the "Court of King's Bench," vol. 6, p. 530; Abridgment Tri. Uni., vol. 21 (A General Abridgment of Law and Equity by Charles Viner, Esq., of the University of Oxford, 1793), pp. 447, 448; Hale's Pleas of the Crown, p. 296. Under the above authorities of England, a jury could be entrusted only to one who had taken the bailiff's oath in the language quoted. The same oath was of force and effect in Georgia until modified by the General Assembly in 1831 (Ga. L. 1831, p. 138).

In *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 189 *Ga.* 807 (7 S. E. 2d 737), it was said that a contract of a foreign State which constituted one of the thirteen original colonies, or of a State which was derived from territory included in one of the colonies, would be construed under the rules of the common law, but that these rules would have no application to the contract of a State that was never a part of English territory.

The State of Mississippi was a part of the colony of Georgia, and would be governed under the rules of the common law. In McCann *v.* State, 17 Miss. 465, it was held that the rules of the common law apply in that State, and that a bailiff is a proper officer to have custody of a jury. The State of Tennessee was formed from territory belonging to the colony of North Carolina, and in Spain *v.* State, 55 Tenn. (8 Baxt.) 514, the judgment denying a new trial was reversed because the officer was sworn only

"to keep the jury together, separate and apart from all other citizens whatsoever until their return in open court," but was not sworn according to the provisions of the common law.

In *Eidson* v. *State*, 65 *Ga. App.* 119, 122 (15 S. E. 2d 452), it was said, with reference to the oath of a sheriff, that the "oath is plenary for all purposes, inclusive of attending and keeping juries as may be required by law," citing State *v.* Hoke, 76 W. Va. 36. In State *v.* Poindexter, 23 W. Va. 805, 812, it was said that the State of West Virginia had enacted a statute as follows: "After a jury in case of felony is empanelled and sworn, they shall be kept together and furnished with suitable board and lodgings by the sheriff or other officer until they agree upon a verdict or are discharged by the court." We do not question the right of the great State of West Virginia to provide by statute that a sheriff is a proper person to have custody of a jury. The law of that State is fixed by statute, and the decisions of the courts of that State are not authority in Georgia, where the rules of the common law of England were adopted by statute and are still of force and effect, unless modified by statute. The case of *Eidson* v. *State*, supra, is not in accord with the law of Georgia, and is therefore disapproved.

The grand juries of the counties fix the pay of bailiffs. Code § 59-601. In *Floyd County* v. *Foster*, 112 *Ga.* 131 (37 S. E. 120), and in *Clark* v. *Clark*, 137 *Ga.* 189 (73 S. E. 15), it was held that there is no provision of law in this State for the payment of a deputy sheriff, as such, for attending court on order of the judge, but a deputy sheriff who takes the oath as a bailiff would be entitled to his per diem under Code § 59-601.

In *Shaw* v. *State*, 83 *Ga.* 92, 99 (9 S. E. 768), it was said: "The State is jealous of the rights and liberties of its people. When one of its citizens is accused of crime, it throws around him all the safeguards that are possible, in order to procure him a fair and impartial trial. It requires the officer who has charge of that particular jury, to swear, in substance, in open court to take them to the jury-room and there keep them safely, and not to communicate with them himself or suffer any one else to communicate with them, unless by leave of the court."

It has always been the rule in Georgia that the person having charge of a petit jury should take the oath prescribed by our

324

Code, and that such person upon taking the oath becomes a bailiff of that court. A sheriff, a deputy sheriff, a town marshal, and many other officers, officials, and citizens may properly take custody and control of a petit jury during their deliberations, but they must first be administered, and must take, the oath prescribed by Code §§ 24-3201 and 59-717. It was error to overrule this ground of the motion for new trial.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., not participating.*