Moncure, P.,
delivered the opinion of the court. After stating the case, he proceeded:
Two questions only arise, and they arise on the three bills of exception which were taken in the case. One of them arises on the first and third bills of exceptions, and . is as to the supposed illegality of consideration. The other arises on the second bill of exceptions, and is as to the admissibility of the parol evidence offered by the defendants and rejected by the court. Ve will consider these questions in the order in which they are above stated.
And first, as to the supposed illegality of' consideration.
It is unnecessary for us to enquire and decide in this case, whether the States which lately seceded from the United States, and formed the new political association called the Confederate States, had a right so to act or not; and whether the new government, thus organized, was a de jure government or not. Those are questions about which there have been, and no doubt' always will be, honest differences of opinion among men. In the South, the prevailing opinion has’ decidedly been, and yet is, that the right of secession existed, whatever may have beén, and yet be, thought as to the expediency of resort- *26 fog to such a measure. In the north, on the other hand, the prevailing opinion, no doubt, has been, and yet is, as decidedly to the contrary. But, however that may be, there can be no doubt but that the Southern States, eleven in number, embracing a territory greatly larger than that of the whole original United States, including a population of more than eleven millions of souls, did, in fact, secede, and form a new Confederate Government; and carried on, for about four years, with the United States, which forcibly resisted such secession, one of the most gigantic wars that ever existed on the face of the earth; that during the greater part of that peiiod, the issue of the war was at least very doubtful; and that during the whole of it, the power of the new government, in the territory over which it extended, was complete and absolute, to the utter exclusion of the power of the preexisting national government. That the government of the Confederate States was at least a defacto government of the highest order, if not indeed a de jure government, would seem to be a truth too self-evident to be denied. That it was a defacto government for many purposes, and to a great extent, has been expressly admitted by the Supreme court of the United States in several cases. Whatever rights may have been denied to it, certainly belligerent rights were not among the number. Those rights were conceded to it by all, even by its enemies. It was admitted to be at least a government of paramount force. And that admission is, alone, decisive of the question we are now considering. If it was a government of paramount force, it certainly had power to raise and support armies; and to do so was a necessity of its nature and existence. It might have enrolled in its armies every man residing on its territory; and it might have taken for their support, and loithout. compensation, every barrel of corn or bushel of wheat, or *27 head of cattle raised upon its soil. No man, nor combination of men, was able to resist, successfully, this paramount force. If, instead of taking these supplies from the people without compensation, the government preferred to make just payment to the owners, was it contrary to law or public policy in them to receive such payment? "Would they not have strengthened, rather than weakened the government, by declining' to receive such payment ? Suppose the agents employed by government to purchase supplies for the army, and furnished with funds for that purpose, had retained and employed the funds for their own use, and bought the supplies on their own credit, (as may have been, and probably was the case in this instance,) would it consist with public policy, any more than reason or justice, to permit them to retain money to which they certainly were not entitled, and withhold it from those whose property had been used by the public, and who had not the power to prevent such use ? This would be to reward the guilty, if any of these parties were guilty, and punish the innocent and helpless. The purchasing agents might, perhaps, have declined to be agents; but the owners of the property purchased could not have declined to part with their property, with or without compensation, if required for the public use. It would certainly have been taken from them, if necessary, nolens volens. The whole southern country was the store-house of the Confederate States, for the supply of their armies, out of which they could draw their supplies at pleasure, and even without making compensation to the owners of such supplies. That they chose to make such compensation, cannot make the contracts of themselves or their agents for that purpose void, as being contrary to public policy. The principles laid down in the able opinion of Judge Staples, concurred in by all the other Judges of this court, *28 in Newton's ex'or v. Bushong, &c., 22 Gratt. 628, fully sustain the views above expressed. Ho other authority need be referred to in support of those views, but that rr . ease, and the cases therein referred to. We are of opm*on ^at sPecial pleas were not sufficient in law, and presented no bar to the plaintiff’s action; and that the circuit court did not err in striking out the said pleas.
Secondly. As to the admissibility of the parol evidence offered by the defendants and rejected by the court.
'We are clearly of opinion that the said evidence was inadmissible, and was properly rejected by the court. The law in regard to the inadmissibility of parol evidence to vary or contradict a written contract, is too well settled to require argument or reference to authority, unless there be something peculiar in the case, which does not exist here. The note on which the action was brought is a promissory note, in the ordinary form, and is as plain as language can make it. Had it been actually intended-by the makers of the note, Ruckman and Glendy, (as must be presumed to have been the case,) to make themselves personally liable for the debt, to the exclusion of every other liability, they could not possibly have employed language more apt for the purpose. Ho name appears upon the face of the note but the names of the makers and of the payee. The makers promise to pay, in the first person plural. There is no reference whatever in the note, express or implied, to any supposed principal for which they could have been acting; nor to any supposed use for which the purchase could have been made but for their own individual use. They do not even specify the property for the purpose of which the note was given, but merely say that it was given “for value received.” There is not a mark nor sign upon it which can afford the slightest pretext for a resort to parol evidence. Hpon what ground, then, can it be argued that parol evidence *29 is admissible to show that the makers are not personally responsible ? The only ground upon which such an argument has been made, is, that the note was given for cattle ° purchased for the public use; and that when a contract is made for the public use, the presumption is, that the public, and not the agent, is liable. Certainly a public agent can make himself personally liable on a contract made by him on the public account; and whether he actually does so or not, in any given case, is a question of intention, depending upon the terms of the contract. The terms of the contract in this case plainly show an intention, on the part of the agents, to bind themselves personally. There is nothing on the face of it which warrants the introduction of parol evidence for the purpose of explanation. If it had been stated on the face of the note that it was given for cattle bought for the use of the army, or of the public, then there might have been room for the presumption and the* argument that the public, and not the agents, were to be liable. The case of Walker v. Christian, 21 Gratt. 291, is supposed by the learned counsel of the plaintiff’ in error, to afford some authority for their argument on this branch of the case; but such is certainly not the fact. The contract there was not aformal bill of exchange or promissory note, signed by the agent in his own individual name, without showing on its face the name of any principal. It was a mere bill of parcels, showing that a certain number of cattle, of a certain weight, had been bought at a certain price, of James Walker, with a memorandum thereunder written, signed by John Christian, directed to Wm. M. Tate, requesting him to “settle with Major Walker the above account.” The action was brought by said Walker against said Christian. The paper, on its face, was equivocal import, and was considered to be open to explanation by parol evidence of surrounding circum *30 stances. Such" evidence was admitted and introduced,, and made the meaning of the paper perfectly plain; and that it was not intended to bind the agent personally. Here the contract was a formal promissory note, signed by the defendants in their own individual names, without referring on its face to any principal; and the legal construction of the instrument to bind the makers personally is confirmed by the fact that credits are endorsed on the note, showing that payments were made by the makers upon it afterwards; one during, and another after the end of the war; they thus treating the note, long after it was made, as their own individual debt; as no* doubt it was.
We are, therefore, of opinion that there is no error in. the judgment, and that it ought to be affirmed.
Judgment aeeirmed.