# WHEELING.

## STATE *v.* TINGLER.

Submitted June 14, 1889.—Decided June 26, 1889.

1. CERTIORARI.
    On suggestion of diminution of the record a writ of *certiorari* is effectual to bring to this court the true and correct record, no matter in what respect the transcript, as certified in the first instance, may vary from or misrepresent such record.

2. INDICTMENT—FORGERY—CRIMINAL PRACTICE.
    The form of the indictment for forgery and uttering forged instruments, found in Mayo's Guide, (Ed. 1860,) p. 537, is good as to both counts.

3. INDICTMENT—FORGERY—CRIMINAL PRACTICE.
    Neither in an indictment for uttering or attempting to employ as true a forged instrument, nor in one for forgery is it necessary to name the person intended to be defrauded, as the Code of 1887, c. 158, sec. 8, dispenses with that in both such cases.

4. INDICTMENT—FORGERY—CRIMINAL PRACTICE.
    It is not necessary in such indictment to allege, that the act was to the prejudice of another's right; but it must appear from the description of the writing in the indictment, that it is such as might prejudice his right.

*B. F. Ayres* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

BRANNON, JUDGE:

Writ of error to a judgment of the Circuit Court of Ritchie county sentencing Tingler to confinement in the penitentiary for two years. A preliminary question arises upon a motion by defendant to dismiss a writ of *certiorari* awarded in this

cause. The transcript of the record accompanying the peti-
tion for the writ of error states, that the grand-jury presented
"an indictment against Thomas Tingler for a misdemeanor.
A true bill." . The Attorney-General suggested a diminution
of the record, and this Court awarded a writ of *certiorari* to
the clerk of the Circuit Court of Ritchie, and the record as
certified by him under the mandate of said writ shows, that
the grand-jury presented "an indictment against Thomas
Tingler for a felony. A true bill." The defendant below
moves this Court to quash this writ of *certiorari*. His counsel
cites the provision in sec. 7, c. 135, Code 1887, that "such
court may in any case award a writ of *certiorari* to the clerk
of the court below, and have brought before it, when part of
a record is omitted, the whole or any part of such record.

*Certiorari,* as an auxiliary writ used by appellate courts to
present to them for decision of errors assigned the record
in the court below, as it in truth exists there, is a remedial
writ belonging to such courts under the common-law without
this statute, and its office should not be hampered by too
strict construction. If counsel means by citing the statute,
that it does not lie in this case, because the statute gives it,
"when part of the record" is omitted, and because the tran-
script, as it first appeared, showed the indictment to be for a
misdemeanor and was full on this point, I do not think the
point well made. The Attorney-General suggested, that this
word "misdemeanor" in the transcript was a clerical error,
and that in the record-book it was in truth "felony", not
"misdemeanor." Literally, if such is the fact, here is a part
of the record omitted in the language of the statute,—the
word "felony,"—and the statute would apply. Certainly,
where the clerk by accident in making the copy substitutes
one word for another found in the record, the spirit and ob-
ject as well as the letter of this act, as well as the common-
law function of the writ, would seem to afford a remedy,
whereby the record, as in truth it is, can be brought to this
Court a better record. In *Shifflet* v. *Com.*, 14 Gratt. 652,
where there appeared an omission in the transcript of the
finding of the indictment, a *certiorari* was held proper to se-
cure a better record. So in *Williams's Case,* 14 W. Va. 869.
If a record is defective or incorrect, the errors or omis-

sions should be suggested in this court, and a *certiorari* moved to bring up a correct record. *Hudgins* v. *Kemp,* 18 How. 530. "Where the clerk's certificate to the transcript is in point of fact not true, the remedy is by *certiorari* to supply deficiencies," says WAITE, C. J., in *Railroad Co.* v. *Dinsmore,* 108 U. S. 30 (2 Sup. Ct. Rep. 9). In short this writ is properly used by this Court to get before it the record of the court below, as it in fact exists, no matter what the character of the defect in the transcript as certified in the first instance here.

Defendant's counsel relies on Seabright's Case, 2 W. Va. 591, which holds, that the purpose of the writ is not to cause a record to be made or corrected but to have brought before the appellate court, when part of the record is omitted, the whole or any part of it. That case does not apply here. There after signing the bill of exceptions the judge during the term had interpolated certain words, and the defendant asked a *certiorari* with the intent to have the bill certified, as it was before the interpolation of those words, and, the facts being agreed, this Court held, that the court below had the right to insert those words; and the real point of the decision was, that the record as already before the court was correct and true, and refused the writ. Judge MAXWELL remarked that a *certiorari* could not be used to cause a record to be made or corrected. This is so. Its office is only to bring up the record as already made by the court below. Any amendment or correction of that record is to be made by that court in a proper proceeding. *Vest's Case,* 21 W. Va. 796; *Bias* v. *Floyd,* 7 Leigh, 647. A *certiorari* will not do this. But in this case the State by the *certiorari* is not seeking to alter, amend or correct the record from its present showing, as it now is in the Circuit Court, but simply to present it here as it is there. The motion to quash the *certiorari* is overruled.

The indictment is as follows: "State of West Virginia, Ritchie county, to wit: The grand-jurors of the State of West Virginia, in and for the body of the county of Ritchie, and not attending said court, upon their oaths present that Thomas Tingler, on the———day of———, 1888, in said county, feloniously did forge a certain paper-writing, pur-

porting to be an order signed by————MacFadden, and to solicit Mr. Collins to let the bearer have three dollars' worth of goods, and which said forged order is of the following purport and effect, to wit: ' Feb. the 23, 1888. Mr. Collins: Please let the bearer have three dollars' worth of goods, and oblige me. . I will pay you in tobacco. MACFADDEN.' With intent to defraud against the peace and dignity of the State. *Second Count.* And the jurors aforesaid, on their oaths aforesaid, do further present that the said Thomas Tingler afterwards to wit, on the————day of————, 1888, in said county feloniously did utter and attempt to employ as true a certain paper-writing, purporting to be an order payable to bearer, which said last-mentioned order is of the following purport and effect, that is to say : ' Feb. the 23, 1888. Mr. Collins : Please let the bearer have three dollars' worth of goods, and oblige me. I will pay you in tobacco. MAC-FADDEN.' With intent to defraud, he the said Thomas Tingler, at the time he so uttered and attempted to employ as true the said last-mentioned forged order and paper writing, to wit, on the day and year last aforesaid, well knowing the same to be forged, against the peace and dignity of the state. On information of Creed Collins and William MacFadden, sworn and sent to the grand jury to give evidence at the instance of the state. H. PECK, Pros. Atty. Indorsed : A true bill. J. M. MACKINNEY, Foreman."

Defendant moved the court to quash the indictment and each count, and his motion was overruled. He then pleaded not guilty and was tried by a jury, and a general verdict of guilty as charged in the indictment was rendered. He moved the court to arrest judgment and grant him a new trial, because the verdict was contrary to law and evidence. The court overruled the motion and pronounced the said sentence, and he excepted.

The bill of exceptions shows, that the State proved by Creed Collins, that the order was presented to him at his store in Ritchie county by the prisoner about the time of its date, who said, that his name was Thomas Campbell, and that the order presented signed "MACFADDEN" was given to him by William MacFadden for work; that Collins gave prisoner

three dollars in goods for the order and charged them to MacFadden, who afterwards refused to pay the same because he had not given the order, and that he (Collins) had lost the amount of the order, three dollars.

The State introduced the order set out in the indictment and proved by William MacFadden, that the name of the prisoner was Thomas Tingler; that he, MacFadden, was not indebted to Tingler at the time, when the order bears date; that he did not write or sign the name "Mac-Fadden" thereto, and did not authorize any one to do so, nor did he ever recognize it as good, but refused to pay it to Collins, and Collins lost three dollars thereon. MacFadden on cross-examination stated, that, since he first had knowledge of the existence of the order, he had said, if prisoner had paid him $100.00 he would not have prosecuted him; that he meant by that, that he would have avoided going before the grand-jury. He said he was the only William Mac-Fadden in Ritchie county.

The State proved by Hallam, that prisoner had been in his custody as jailer upon this charge; that he was not kept locked in the cell but was permitted to be at large in the room containing the cells or cages; that the door of the room was not locked, but propped with an iron poker from the outside; that prisoner pried one of the hinges of the door loose and escaped and was gone three months. A. reward was offered, and he was captured by a man named Frey. An account was shown witness in his favor against the State, sworn to by him, for criminal charges, charging for receiving and discharging this prisoner at date of escape, and he admitted swearing to the account, stating that he was mistaken, and should have charged only for receiving the prisoner.

Treating, as we must, the record of the finding of the indictment as correctly shown by the record sent up by the clerk under the *certiorari*, there is nothing to sustain the motions to quash and in arrest of judgment, so far as they rest on that point.

Is the indictment good in both counts? We think it is. The prisoner's counsel argues, that the second count is bad because it does not specify the person to be defrauded. The counsel admits, that the first count, though it does not name

such person, and though bad at common-law, is good under the Code, 1887, c. 158, sec. 8, providing that "where an intent to injure, defraud, or cheat is required to constitute an offence, it shall be sufficient in an indictment or accusation therefor to allege generally an intent to injure, defraud and cheat without naming the person intended to be injured, defrauded or cheated;" but contends, that the second count, that for uttering, is not helped by this statute. We do not concur in this view. We think, that such intent exists in the uttering and employing as true a forged instrument, knowing it to be forged, as much as in the act of forging it. In *Henderson's Case,* 29 W. Va. 147, (1 S. E. Rep. 225) the count for uttering did not charge, whom it was intended to defraud, though it did charge to the prejudice of Leonard, and it was held good. So in *Koontz's Case,* 31 W. Va. 173 (5 S. E. Rep. 328) the indictment was held good, though it did not name the person to be defrauded. This indictment is in the form found in Mayo's Guide, which has for many years been used in both Virginias.

In assigning errors the prisoner's counsel points out as a defect in the indictment, that it does not allege, that the act was to the prejudice of any one's right. *Powell's Case,* 11 Gratt. 822, is a full answer to this point. There it was held, that the words " to the prejudice of another's right," found in the statute against forgery, need not be used in the indictment, because they are descriptive not of the offence but of the instrument. Having specified various instruments as subjects of forgery, it being impossible to specify all, section 7 provides; " If a person forge any writing other than such as is mentioned in the first and third sections of this chapter, to the prejudice of another's right," plainly intending by these words to describe or characterize the writing not the act. If the instrument itself be of such character, as may prejudice another's right, that is enough. There is no error therefore in overruling the motion to quash and in arrest of judgment.

Was there error in refusing a new trial? Prisoner's counsel urges, that the evidence does not show, that the forgery was committed in Ritchie county. The prisoner in Ritchie county has the order in his possession and passes

it about the date of the order. If he forged it, why may it not be said, that he forged it there? In *Poindexter's Case*, 23 W. Va. 805, this Court held, that on a trial for forgery, if it be proved, that the writing was found in the hands of the prisoner in the county, where he uttered or attempted to employ it as true, and there is no evidence, that the forgery was done in another county, the jury may infer from these facts, that the forgery was committed in that county. In *Spence's Case*, 2 Leigh, 751, the court held, that evidence, that the prisoner had the note in his possession in a county was proper evidence to go before the jury of the fact, that he committed the forgery there. See 3 Greenl. Ev. § 112. The jury having found against the prisoner as to this point, it being the judge of the weight of the evidence, this Court can not find otherwise, unless we consider the evidence manifestly insufficient. But the verdict, it may be added as pertinent to this point, is general. It finds the prisoner guilty of uttering and employing the order as true as much, as it finds him guilty of forgery, and this certainly occurred in Ritchie. This consideration would render the question of the place of the forgery immaterial, even if there were anything of substance in it.

We are of opinion, that the evidence justifies the verdict. Judgment is to be affirmed.

AFFIRMED.