## CORPORATION COURT OF THE CITY OF SOUTH NORFOLK

Commonwealth of Virginia

v.

Alice Turner

November 12, 1954

By JUDGE ELLIOTT MARSHALL

In this case, after a verdict of guilty of voluntary manslaughter and assessment of five years in the penitentiary by the jury, but before judgment, the accused moved to set aside the verdict and for new trial upon the ground, among others, that the court erred in sustaining an objection by the Commonwealth to the admission of certain evidence on behalf of the accused. Exception was duly noted.

The ruling of the court in question came after the accused had called several witnesses who had testified that the general reputation of the accused as a peaceable, law-abiding citizen in the neighborhood where she resided was good. The accused then offered to prove by several witnesses that her reputation in those respects at the place of her employment was, likewise, good. Objection by the Commonwealth was sustained, the court ruling that evidence of reputation is confined to that existing in the neighborhood or community in which the subject resides.

It appeared in evidence that the accused was reared in the City of Norfolk and had moved to South Norfolk a few years ago. She has worked at the Navy

Yard in Norfolk for about twelve years. Her hours of work are about forty per week. The Commonwealth's Attorney took issue with her general reputation by showing that she had been residing with a man (whom she later married) not her husband pending her divorce. This fact was commented upon in the Commonwealth's closing argument.

The original common law rule of admissibility of reputation evidence, both as to veracity and as to other traits of character, was probably limited to the neighborhood where the subject resided, and under the modern decisions this still appears to be the rule in some states. However, there is weighty opinion to the contrary. Prof. Wigmore, in his work on evidence, 3rd Ed., Vol. V, Sec. 1616, criticizes the failure of the courts to extend the rule in view of the changes wrought in modes and customs of living as the result of human progress, saying:

> Time has produced new conditions for reputations. The traditional requirement about "neighborhood" reputation was appropriate to the conditions of the time; but it should not be taken as imposing arbitrary limitations not appropriate in other times. "Alia tempore, alia mores." What the law, then as now, desired, was a trustworthy reputation, if that is to be found among a circle of persons other than the circle of dwellers about a sleeping place, it should be received.

As early as 1886 in West Virginia, it was determined that testimony as to the bad reputation of the accused "for honesty" was admissible although the witness did not know his reputation in the neighborhood in which he lived, and only knew it where he was accustomed to transact his business, some twelve miles away. State v. Henderson, 29 W. Va. 147, 1 S.E. 225. In that case (S.E. p. 239) the lower court had propounded a definition which was quoted with approval:

Neighborhood means the neighborhood in which the party resides, which includes where he moves and circulates and transacts his business, and attends church, stores, mill and mixes generally with the people in the usual calls of life, and is best known, not extending to any great number of miles, and not extending beyond the same immediate section of his residence, and such acquaintances must be within that limit.

The only Virginia case touching on the subject which I have been able to find is Brotherhood of R. T. v. Vickers, 121 Va. 311 (1917), where it was held to be reversible error to exclude the testimony of a number of the plaintiff's fellow railroad workers as to his general reputation for truth and veracity. These witnesses did not know the plaintiff's reputation in the community in which he lived, but came in daily contact with him along the railroad line where he worked. The court, while it does not cite Wigmore (supra), came to the same conclusion, stating (Whittle, P):

Those most likely to be acquainted with the general reputation of the plaintiff for truth naturally might be expected to be found among his associates engaged in a common employment. Nor is it an unreasonable construction to hold that the neighborhood of one engaged in railroading is coextensive with the time over which he works, and that persons with whom he comes in daily contact and with whom he is familiarly acquainted should be classed as neighbors in the true sense of the rule in question. (Italics Supplied.)

It seems to me that both Professor Wigmore and Judge Whittle are saying the same thing: namely, general reputation should not be confined to any exact location. If the witnesses are in a position to know the general reputation of a person in any place where it

has been established among his neighbors or associates, it should be admitted.

In Hamilton v. State, 176 So. 89, 112 A.L.R. 1013 (Fla. 1937), one of the grounds of reversal of the lower court was the refusal to admit the testimony of witnesses as to the good reputation of the accused for truth and veracity. These witnesses were fellow employees of the accused at the hotel where she worked some distance away from her home in the same city. They had never visited her in her home and had no knowledge of her reputation in the neighborhood where she resided. The court stated the rule to be limited to the community or neighborhood in which the subject resides, but this means the community or neighborhood "where he or she is best known," which under the peculiar facts of the case "should be expanded to take in the place in the same city where the defendant worked day after day." The peculiar facts were that the accused had not had time nor opportunity to associate with her neighbors to the extent that they could know her reputation.

The Virginia and West Virginia cases mentioned above, among others, are cited in an annotation to the Florida case in 112 A.L.R. 1022 for the proposition that reputation evidence is "not necessarily" limited to the neighborhood of residence, but the circumstances may justify the admission of evidence of reputation where the subject works or carries on a business. While the rule announced in the Florida case might apply only to instances where it appears that the subject had not had opportunity to acquire a reputation in the neighborhood of residence, I can find no such limitation in the opinions in the Virginia and West Virginia cases. Apparently it was the feeling of those courts that evidence of reputation should never be confined strictly to neighborhood of residence, but should be admitted whenever the facts appear to justify the assumption that a general reputation could be formed, leaving to the jury the questions as to weight and credibility. Thus, evidence of good reputation in the neighborhood of residence could be combatted by evidence of bad reputation at place of business as in

the West Virginia case, and, of course, <u>vice</u> <u>versa</u>. Georgia seems to have expressly "repudiated" the rule limiting evidence of reputation to neighborhood of residence. <u>Keener</u> v. <u>State</u>, 18 Ga. 194, 112 A.L.R. 1023 (1855).

Although there is competent authority to the contrary it is my opinion that the Virginia rule follows Wigmore's suggestion that evidence of reputation, both good and bad, should be admissible where it appears that the witness has had sufficient opportunity to associate with the subject in order to have knowledge of his general reputation. This association may occur at any place where the subject occupies himself for a considerable period of his life, whether in the neighborhood where the subject lives, his place of business or work or any other place where his activities are such as likely to establish a reliable general reputation. Under this rule a person might have more than one general reputation, and such reputation might vary, but this is a question which the jury may consider and decide.

In the instant case, had there been no issue as to reputation I doubt that the ruling of the court would have constituted prejudicial error. In fact, where the reputation is unassailed I believe that the court has power reasonably to limit the number of witnesses of good reputation under a holding that such reputation has been established as a fact and the jury must so accept it. Otherwise, the trial might be delayed unduly by the introduction of numbers of corroborative witnesses. However, an issue was joined on the reputation in this case and, surely, the court could impose no such restriction upon the corroboration.

The defendant contended and testified that she made no attack upon the deceased and, in fact, actually did not intend to injure him with the knife which she said was in his possession and with which he inflicted a wound upon her at the commencement of the struggle. The other evidence tended to show that she stabbed him to the heart during a heated argument. While she

offered no evidence of her general reputation for truth and veracity which might have tended to support the truth of her story of the affray, the evidence of her good reputation as a peaceable, law-abiding citizen would tend to support her testimony that she did not make a legally unjustifiable assault upon the deceased. Therefore, the erroneous exclusion of the evidence in question could hardly be said to be harmless.

In my opinion the court erred in its holding. The motion for new trial must be sustained.